## BULLARD *vs.* HINKLEY.

Where a debtor, to defraud his creditors, made a fictitious mortgage of his estate; and afterwards a creditor, deeming the mortgage *bona fide*, attached the right in equity of redemption, which was subsequently sold by the sheriff to an innocent purchaser; and pending the attachment another creditor extended his execution on the land, and caused it to be set off in fee, treating the mortgage as a nullity; it was *held*, that the mortgage, being fraudulent, created no equity of redemption; that the sheriff's sale was void; and that therefore the subsequent extent gave the better title to the land.

THIS was a writ of entry. The principal facts are stated in 5 *Greenl.* 272, where the same case is reported. Both parties claimed the land under levies of executions against one *Houghton*. The demandant, who was a judgment creditor, took the land by extent, in *May* 1825, under an attachment made *March* 28, 1824.

The tenant claimed title by deed from Mr. *Everett*, who had purchased the right in equity at sheriff's sale, *Aug.* 17, 1824; and showed a mortgage made by *Houghton* to one *Larrabee, June* 1,

37

1822, which was recorded *March* 13, 1824; and an attachment of the right in equity *March* 19, 1824, at the suit of *David Dunlap;* under which attachment the right was regularly taken and sold on execution. After the right was seized in execution, and before the sale, *Larrabee* sent the notes mentioned in the mortgage, and a deed of release of the mortgage itself, to *Houghton's* wife, he being then out of the country, to which he did not return till long after all these transactions. She had no authority from him to receive the deed; of which he had no knowledge till his return. The demandant proved that the mortgage was fraudulent; the debt therein mentioned being principally fictitious. *Houghton* released the land to the tenant *July* 29, 1825.

Upon this evidence the jury were instructed by the Chief Justice that if the mortgage was fraudulently made, as it seemed to have been, yet if that fact was unknown to the tenant at the time of his purchase for a valuable consideration, it could not in law affect his title : and that if *Houghton's* wife was not authorised by her husband to receive and accept the release, it did not operate to pass any estate till it was accepted by *Houghton,* upon his return; and therefore did not affect any rights previously acquired under the sale. The jury returned a verdict for the tenant; saying that the mortgage was fraudulent; but that neither the tenant, nor *Everett,* nor the officer were conusant of the fraud; and that the wife had no authority to receive the release. The verdict was taken subject to the judgment of the court upon the instructions given to the jury.

*Fessenden* and *Deblois,* for the demandant, argued that the mortgage having been found to be fraudulent, there never was any right in equity of redemption created, and so no foundation for the proceedings under which the tenant claimed to hold. *Sands v. Codwise,* 4 *Johns.* 546; *Goodwin v. Hubbard,* 15 *Mass.* 210; *Ricker v. Ham,* 14 *Mass.* 137; 3 *Mass.* 573; *How v. Ward,* 4 *Greenl.* 195; *Powel on Mortg.* 23, 24. It was equally void as to all the creditors of *Houghton;* and therefore no one of them could make it good by election. But if it were not so, yet the notes having been voluntarily given up before the sheriff's sale, that was in law a discharge of the mortgage; leaving no equity remaining to be sold.

*Gray v. Jenks,* 3 *Mason* 520; *Vose v. Handy,* 2 *Greenl.* 322; *Darling v. Chapman,* 14 *Mass.* 101.

*Greenleaf,* for the tenant, maintained his title on the ground that the mortgage might be treated as void or not, at the election of any creditor who might first acquire the right by priority of seizure; and that an innocent purchaser under a sale of the equity ought to be suffered to hold it, on the same principle by which the innocent purchaser from a fraudulent grantee is protected. If the right in equity produced more than sufficient to satisfy the demand it was sold for, the surplus might be attached in the sheriff's hands by any other creditor. If it sold for less than its value, it might be redeemed by an unsatisfied creditor, within the year, and sold again. And in either case, the fraudulent mortgagee might be reached by a bill in equity, and compelled to satisfy any creditor, to the value of the pretended mortgage.

The payment of the debt after seizure in *execution,* he insisted, was not within the provisions of *Stat.* 1821, *ch.* 60, *sec.* 1, 17, 18; and so did not affect the case. The statute contemplates only payments made after attachment, and before seizure in execution.

The opinion of the Court was read at the following *November* term as drawn up by

MELLEN C. J. This cause has once been before the court, upon certain facts reported and questions of law reserved. The decision is found in 5 *Greenl.* 272. Upon revision of our opinion, we are perfectly satisfied of its correctness. The verdict was then set aside, which had been returned for the demandant, and a new trial granted. On the last trial a new question of law arose, for the decision of which the cause is again to be examined, in connexion with a new and prominent fact, which did not appear on the former trial; but it appears now, the jury having found that the mortgage deed from *Houghton* to *Larrabee* was fraudulent, and made to defeat the rights of *Houghton's* creditors; though they have also found that neither the officer who attached and sold the equity, nor *Everett,* the purchaser of it, nor the tenant, was in any manner or in any degree conusant of the fraud. The introduction of these facts into the cause, has chang-

ed its complexion, and occasioned much doubt and hesitation on our part. The question before us is by no means free from difficulty; and such as has never before been presented to our minds. We have, however, after much consideration, come to a conclusion with which we are satisfied.

The demandant's title is short and simple. The mortgage, though executed and recorded before the demandant's attachment, being fraudulent, was voidable by the creditors of *Houghton*. At the time of the attachment, *Larrabee* was the apparent owner of the fee as mortgagee; and the demandant attached the land, not treating the conveyance as a mortgage, but as a nullity. Whether he then knew or suspected the fraud, does not appear. He obtained judgment and extended his execution upon the land *May* 28, 1825, within thirty days after the judgment, which levy was seasonably recorded. All this, *Bullard*, as a creditor of *Houghton*, had an unquestioned right to do; for, as against him, the mortgage was an ineffectual conveyance and voidable at his pleasure. This is his title; and it is a good one, unless the proceedings relating to the attachment and sale of the equity, and the purchase of *Larrabee's* right as mortgagee, have defeated it. In the statement and view of the demandant's title, we may here introduce the quitclaim deed from *Larrabee* to *Houghton*, dated *July* 15, 1824. Though this does not appear to have been accepted by *Houghton* at the time of its date, yet it was delivered to him and accepted by him, several months before *Bullard's* levy, which was not till the latter part of *May* in the next year. So that whatever estate was conveyed by the mortgage to *Larrabee*, was reconveyed to *Houghton* before the levy, provided such operation was not prevented by the previous seizure of the equity on *Dunlap's* execution. We formerly decided that the release in the then existing circumstances and upon the facts then disclosed to us, could not and did not operate to the prejudice of the tenant; but on the contrary that it operated by way of assignment of *Larrabee's* title as mortgagee. It is, however, of no importance now, whether it operated as an assignment or a release of the mortgage, provided the fraud between *Houghton* and *Larrabee*, which poisoned the mortgage deed in its creation, produced those fatal consequences in relation to the

tenant's title, which the counsel for the demandant contends were produced ; for in that case, it vested the estate in *Houghton* and made him absolute owner of it in appearance as well as in fact, be- fore *Bullard's* execution was extended. The important inquiry then is, " What effect has the original fraud produced upon the mortgage, and upon the respective rights of *Houghton* and *Larrabee,* as mort- gagor and mortgagee, and upon those claiming under them ?"— The position of the demandant's counsel is, that a fraudulent mort- gage creates no equity of redemption in respect to a creditor who elects to consider and treat it as a nullity, by extending his execu- tion in usual form upon the land ; and that by such a levy the ap- parent equity of redemption instantly vanishes, and the purchaser of it, when sold on execution, is at once defeated, and his supposed title becomes a perfect nullity *ab initio ;* and that what was considered as a substance at the time of the sale, has been proved to be merely a shad- ow. If this position is correct, the priority of attachment and title, is a matter of no importance. In examining the cause, as to the effect of the fraud in the mortgage, we have been led into some confusion by comparing the sale of the equity by a sheriff on execution, to a sale by *Houghton* himself : but upon a more careful examination of the subject, we perceive a distinction which must not be disregarded, considering the purchaser in both cases as unaffected by notice of the original fraud. As to all persons but the mortgagee, the mort- gagor is in law considered as the owner of the fee ; therefore, in the present case, if *Houghton* had conveyed to *Everett* the premises in question, he, being an innocent purchaser, might defend himself against *Larrabee,* and by proof of the fraud, completely defeat the mortgage and hold the land relieved of all incumbrance, as an abso- lute estate. But a sale of an equity of redemption is a statute sale, and in all cases of a statute title, all the circumstances necessary to give effect to that title must concur ; otherwise nothing passes. The numerous decisions respecting the levy of executions are illustrations of this principle. The statute which authorises a sale of an equity, presupposes the existence of a legal mortgage. Surely the legis- lature, in enacting this provision, cannot be considered as making ar- rangements and regulating proceedings respecting the management

and disposition of property, in such a manner as to protect fraudulent transactions, while at the same time the law condemns all such transactions; and as has been before observed, authorises a levy upon the land, by any creditor, who may incline to treat the mortgage as a nullity; which levy, by the express language of our statute shall make as good title to the creditor, his heirs or assigns, as the debtor had therein; and, as to such creditor, a fraudulent grantor or mortgagor has a good and legal title, his conveyance notwithstanding. Though a deed may be valid between the parties, but voidable on the ground of fraud, by the creditors of the grantor, yet we do not perceive on what consistent principles it can be, as in the present case, treated by one creditor as a valid deed and a subsisting mortgage, and by another creditor as fraudulent and void; or, to be more definite and particular, how one creditor, by choosing to treat a mortgage as valid and *bona fide*, and attaching the equity of redemption, which may apparently be worth but one tenth of the value of the premises mortgaged, can by so doing, deprive another creditor of the right of effectually attaching the land or premises—disregarding the mortgage—and extending his execution thereon and acquiring a good title to the whole. If one creditor of the mortgagor, and perhaps a friendly one, can, by attaching the equity, bind the hands and rights of all other creditors, it would seem to change the law and prevent the due application of its principles; for in such a case the purchaser of the equity will have the right to redeem; and by redeeming, he will become, in the case put, the owner of the whole by paying one tenth—being the apparent value of the equity of redemption; and in what manner can the honest creditors of the mortgagor reach the property in the hands of the purchaser of the equity, who has, on the principles contended for by the tenant's counsel, acquired a good title to the whole, by paying the one tenth of its value. Principles which may lead to such consequences, have a suspicious appearance; and on examination, they cannot be sanctioned. The law, under which the tenant professes to derive his title, has authorised the sale of an equity of redemption. The provision of the statute presupposes the legal estate to be in one man, and the equity of redemption in another; and it has prescribed the

mode of proceeding by which a creditor of the mortgagor may avail himself of all the interest which he has in the premises, that is, by a sale of the equity, which is worth the difference between the debt honestly secured by the mortgage, and the fair value of the premises mortgaged. But in the case of a fraudulent mortgage such is not the fact. In such a case, where the asserted debt is merely fictitious, the whole estate in the premises is liable for the debts of the mortgagor, and may be seized, appraised and taken in execution ; and the whole legal estate being gone, there can be no equity of redemption. It is true, it does not appear that the fraud was discovered until after the levy on the land and the sale of the supposed equity ; but the rights of *Everett*, in virtue of his purchase, must be decided upon facts as they then existed ; not merely as they were then known. In the view we have taken of the cause, the want of a *scienter* on the part of *Everett* and the tenant, ceases to be of any importance. *Everett*, in fact, purchased nothing at the auction, and he sold nothing to the tenant, nor did any thing pass to him by *Houghton's* deed of *July* 29, 1825, because it was executed several months after *Bullard's* levy. We conclude this opinion by observing that a *bona fide* purchaser, without notice, may indeed protect his title ; but he must be a *bona fide* purchaser of the mortgage ; and not a person claiming and coming in after, but not under, the mortgage. As in this case the tenant does not so claim, *Bullard* by his levy has defeated the mortgage *ab initio*, and proved that there never was an equity of redemption, by the sale of which on execution, a levy on the land, before or after such sale, could be defeated.

We are of opinion that the verdict must be set aside and a

*New trial granted.*